**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TANYA L. WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-8037 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| ILLINOIS CENTRAL SCHOOL BUS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Illinois Central School Bus, LLC's motion for summary judgment [45]. For the reasons set forth below, Defendant's motion [45] is granted in part and denied in part. This case is set for further status on September 12, 2017, at 9:30 a.m. to set a schedule for pre-trial filings and to discuss the possibility of settlement.

**I.    Background**

The Court takes the relevant facts from the parties' Local Rule 56.1 statements: (1) Defendant's Rule 56.1(a)(3) Statement of Undisputed Material Facts [47]; (2) Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Material Facts Requiring Denial of Defendant's Motion for Summary Judgment [50]; and (3) Plaintiff's Response to Defendant's Rule 56.1(a)(3) Statement of Undisputed Facts [49]. The Court construes the facts in the light most favorable to the nonmoving party—here, Plaintiff. Before describing those facts, the Court briefly discusses the requirements of Local Rule 56.1.

**A.    Local Rule 56.1 Statements Of Fact**

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine dispute and entitles the movant to judgment as a matter of law. The rules require that the movant set forth those material

facts in short numbered paragraphs that contain one or two individual allegations. L.R. 56.1(a); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). Compliance with Local Rule 56.1 is not optional; it "provides the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995). If the moving party includes facts in a brief that it omits from its 56.1 statement, then the non-movant has no proper place to admit or deny those facts. For that reason, "[s]imply providing additional facts in one's responsive memorandum is insufficient to put those facts before the Court." *Malec*, 191 F.R.D. at 584.

Defendant, who is represented by counsel, took a casual approach to Local Rule 56.1. Although a movant can file up to 80 separately numbered statements of undisputed material fact without seeking leave of the Court, L.R. 56.1(a), Defendant filed only 39 [47]. Yet Defendant included several other facts in its opening brief, including a detailed discussion of four sexual harassment incidents [46, at 2–4], "sexually laced banter" involving employees other than Plaintiff (*id.* at 5), and Plaintiff's office environment (*id.* at 9). Plaintiff moves to strike those allegations. [51, at 4–5.] Defendant responds in a footnote in its reply brief that these facts—which form the core of its motion—"are largely based on Plaintiff's and her witness's testimony and are only taken as true for purposes of this Motion." [52, at n.3.] That is no justification at all. Not only is that inaccurate (many of these "facts" and Defendant's characterizations of them are plainly contested), but a material fact's source is not a reason for excluding it from a Local Rule 56.1 statement. The Court agrees that these additional facts cannot serve as a basis to grant summary judgment. As the Seventh Circuit has explained, "it is not the parties['] prerogative to determine when a rule can be satisfied by other than what the rule requires." *Midwest Imports*, 71 F.3d at 1317. "[Defendant] must suffer the consequences, harsh or not, of its default." *Id.*

That said, Plaintiff submitted a Local Rule 56.1(b)(3)(C) Statement [50] that touches on many of these same incidents. Defendant submitted no response to this submission. Local Rule 56.1(a) directs that "[a]ll material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party." Accordingly, all of Plaintiff's additional facts contained in its Local Rule 56.(b)(3)(C) statement [50] are admitted for purposes of summary judgment. To the extent that Defendant's supplemental facts overlap with Plaintiff's additional facts (such as the main sexual harassment incidents), the Court will consider them to the extent that they have been deemed admitted.

### B. The Facts

Defendant Illinois Central School Bus, LLC provides transportation services to schools—namely, school buses. [49, ¶ 1.] Defendant also operates school bus terminals, including one in Blue Island, Illinois that serves Chicago Public School students. *Id.* ¶ 2. Plaintiff Tanya Watkins was hired in 2010 as a part-time bus driver at this terminal, and in January 2011, she was promoted to be a full-time dispatcher. *Id.* Plaintiff's responsibilities involved managing bus routes, such as by ensuring bus drivers were assigned to all regular routes; responding to route changes; communicating with drivers, schools, and parents; and scheduling charters. *Id.* ¶ 5.

As a dispatcher, Plaintiff reported to Cindy Sosnowski and Kyra Terry. [49, ¶ 3.] Originally, Terry had management responsibilities over the Blue Island terminal, and Sosnowski reported to Terry as an assistant manager. *Id.* ¶ 4. In early 2012, Terry was transferred to another terminal and Sosnowski was promoted to become the Blue Island terminal's contract manager. *Id.* She worked in this position until June 2015. [47-27, ¶ 4.]

Between September 2011 and May 2012, Plaintiff and Sosnowski had a series of office interactions that were—to put it mildly—inappropriate. On "several occasions," "Sosnowski

grabbed her crotch and asked Plaintiff if she wanted to play with Sosnowski's genitalia." [50, ¶ 7.] Other co-workers, including Terry, observed these comments [50-1, at 14; 50-4, at 17; 50-8, ¶ 13], and one co-worker testified that Sosnowski made sexual comments like this to Plaintiff "daily." [50-1, at 14–15.] Sosnowski would repeatedly "lean" or "lay" her breasts on Plaintiff's back, which according to a coworker, happened "several times a week." [50, ¶ 4; 50-1, at 16.] She "rubbed up against Plaintiff's breasts on a few occasions." [50, ¶ 5.] She commented on Plaintiff's breasts at least three or four times. [50, ¶ 9; 50-4, at 11–12.] Terry heard these comments after February 2012 even though she was at the terminal only "occasionally." [50-8, ¶¶ 11–12.] In addition, Sosnowski commented that she "want[ed] a woman to impregnate her" [50-1, at 57], and asked Plaintiff at least twice, "What's wrong with being with a woman?" [50, ¶ 8; 47-2, at 45.]

The parties also highlight three other specific incidents. In October 2011, "Sosnowski purposefully rubbed her thumb on Plaintiff's nipples to check the hardness or stiffness of Plaintiff's nipples" and told Plaintiff that she looked cold. [50, ¶ 1; 46, at 2.] Plaintiff and two of her co-workers described this incident and that Plaintiff felt uncomfortable and embarrassed. [47-2, at 48; 50-1, at 15, 57; 50-2, at 23.] Sosnowski could not recall this incident. [47-3, at 4.] In February 2012, Sosnowski called Plaintiff into her office and "asked Plaintiff if Plaintiff wanted to see a hole in Sosnowski's breast." [50, ¶ 6; 47-3, at 4.] Plaintiff told her no, but Sosnowski asked Plaintiff if she was sure. [47-2, at 46, 47.] Plaintiff said she was and left Sosnowski's office. *Id.* In April 2012, Sosnowski walked up to Plaintiff while she was standing at her desk, "purposefully grabbed Plaintiff's breasts for approximately 5 seconds to see if they were heavier than Sosnowski's," and then "let [Plaintiff's breasts] drop." [46, at 3; 50, ¶ 2.] Plaintiff's co-workers offer colorful descriptions of this incident. [See 50-1, at 13 (explaining

Sosnowski "groped her big time" and it was not an accident but "a two-hander let's check them outside grab"); 50-2, at 19, 20–21 ("She groped it" and Plaintiff "just was in shock").] Sosnowski could not recall this incident either. [47-3, at 4.]

In light of the foregoing, "Plaintiff believed that Sosnowski wanted to have sexual relations with Plaintiff." [50, ¶¶ 8, 12.] Two co-workers thought that Sosnowski was gay or at least curious about having a sexual relationship with another woman. *Id.* ¶ 11. Sosnowski submitted an affidavit in which she avers, "I am a heterosexual female. I have been married to my male husband * * * [and w]e have two children." [47-27, ¶ 2.]

In May 2012, Plaintiff complained about sexual harassment to Defendant. [50, ¶ 13.] She filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 8, 2012. *Id.* ¶ 16. Sosnowski learned of Plaintiff's complaint to Defendant and the EEOC charge. *Id.* ¶¶ 14, 17. It is undisputed that after the internal complaint was filed, no other alleged acts of harassment or discrimination occurred. [49, ¶ 24.]

In October 2012, Sosnowski recommended Plaintiff's termination. [50, ¶ 21.] Prior to this date, Plaintiff had received several complaints and disciplinary write-ups, including on February 21, 2011 [49, ¶ 10], March 25, 2011 (*id.* ¶ 13), May 10, 2011 (*id.* ¶ 14), September 27, 2011 (*id.* ¶ 15), October 19, 2011 (*id.* ¶¶ 16, 18), May 23, 2012 (*id.* ¶ 20), July 2012 (*id.* ¶ 25), and August 28, 2012 (*id.* ¶ 27).[1] These incidents ranged from failing to provide a safety harness for students with special needs, failing to ensure a bus was returned to the correct terminal,

---

[1] Plaintiff asserts that the Court should strike many of these allegations as lacking authentication and hearsay, but Sosnowski submitted an affidavit authenticating the disciplinary notices and laying foundation for their admission as business records pursuant to Federal Rule of Evidence 803(6). [See 47-27, ¶¶ 6–9.] Plaintiff offers no argument as to why this showing is insufficient. Plaintiff does not specifically object that the statements within these emails or disciplinary notices are hearsay within hearsay, and it is not clear that the statements are being offered for the truth (rather than the fact that a complaint was made). Likewise, Plaintiff objects to Defendant's reliance on Plaintiff's own statements as "hearsay" [49, at 14], but statements by a party opponent are not hearsay, Fed. R. Evid. 801(d)(2)(A).

missing work one day, unprofessional behavior with customers and co-workers (such as accusing a co-worker of having sex in the office, yelling insults at co-workers, and telling a bus driver with a broken down bus that he should carry the students back to school on his back), and mixing up instructions for a charter bus trip that resulted in a "substantial discount" to compensate for the mistake. *Id.* ¶¶ 10–27. On March 12, 2012, Plaintiff received a "low performance rating," meaning that she was "not meeting performance expectations." *Id.* ¶ 19.

On October 5, 2012, Plaintiff sent an email to Sosnowski where she stated that she would no longer work on charters because she wanted her "review next year to be better than it was last year." [47-20, at 2.] Sosnowski forwarded that email to her manager and stated that Plaintiff was a disruption to other employees and interfering with her ability to be an effective manager. [49, ¶ 33; 47-21, at 3.] A few days later, one of Plaintiff's bus routes was not covered "because Plaintiff failed to note that the route was requested the night before." [49, ¶ 36.] On October 9, Sosnowski's manager responded that the fact that Plaintiff "blew a route" and had "several write-ups" in her personnel file warranted "suspension and/or termination." [47-22, at 2.]

According to Plaintiff, Sosnowski did not leave Plaintiff's termination to chance. At least five employees were called into meetings with Sosnowski in early October, which was unusual for the office. [50, ¶¶ 24– 25.] These employees then lodged complaints about Plaintiff (some from months earlier) over a two-day period. *Id.* ¶¶ 21, 26. On October 10, Sosnowski sent an email to her managers about several incidents that "were just given to [her]" about Plaintiff as well as recounting her performance review and the disciplinary incidents from 2011. [47-24.] Sosnowski's typical practice when receiving a complaint was that she would "talk to the subject of the complaint, investigate, and then determine if discipline was warranted." [50, ¶ 27.] "Defendant's policy required that an employee be shown a disciplinary warning, write-up,

or complaint to allow the employee an opportunity to contest it." *Id.* ¶ 29. Although Sosnowski followed this practice with Plaintiff before she filed her internal sexual harassment complaint and EEOC charge, Sosnowski did not do so in October 2012. *Id.* ¶ 32. Plaintiff was not shown any of these October complaints or given an opportunity to contest them, and no investigation was conducted into them. *Id.* ¶¶ 30, 31. Based on Sosnowski's recommendation, Plaintiff was terminated on October 17, 2012. [50-6, at 29; 47-26; 47-27.]

Following these events, Plaintiff filed this suit alleging sexual harassment, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. Defendant moved for summary judgment [24].

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To establish that a material fact is undisputed, the movant "must support the assertion by * * * citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations * * *, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). In determining whether summary judgment is appropriate, the Court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. See *Carter v. City of Milwaukee*, 743 F.3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Put another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

III.    **Analysis**

Defendant moves for summary judgment on all three claims: disparate treatment on the basis of sex (Count I), sexual harassment and hostile work environment (Count II), and retaliation (Count III). As a threshold matter, Plaintiff offers no defense of her disparate treatment claim and seeks to "withdraw" it. [51, at 1.] As a result, the Court grants Defendant's motion for summary judgment on Count I, Plaintiff's disparate treatment claim. The Court takes Plaintiff's two remaining claims in turn.

A.    **Sexual Harassment Claim (Count II)**

Title VII protects employees against a hostile work environment so "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Hall v. City of Chi.*, 713 F.3d 325, 330 (7th Cir. 2013) (citation and internal quotation marks omitted). "To pursue a hostile work environment claim, [Plaintiff] must prove (1) that her work environment was both objectively and subjectively offensive; (2) that the harassment was based on her membership in a protected class; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." *Dear*

*v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009).  Defendant contends that it is entitled to judgment as a matter of law on the first, second, and third elements of this claim, and does not move for summary judgment on the fourth.  Many of Defendant's arguments are difficult to fathom.

### 1. Objectively and Subjectively Offensive

"[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Defendant asserts that "the conduct in this case was not sufficiently offensive – from either an objective of subjective viewpoint – to constitute actionable sexual harassment" because "there was nothing oppressive, threatening, or demeaning about the alleged conduct."  [46, at 8.] Really?  There was *nothing* demeaning about Sosnowski's conduct?  How is grabbing Plaintiff's breasts with both hands for five seconds to "weigh" them, or, in Defendant's words, "flick[ing] Plaintiff's erect nipple" [52, at 9]—in front of other coworkers and without consent—*not* demeaning?  A supervisor repeatedly grabbing his or her crotch and goading an employee to play with it might be the very definition of demeaning.  Plaintiff testified that this and Sosnowski's other conduct toward her made her feel uncomfortable and embarrassed, and two of her coworkers corroborated this characterization.  [50, ¶¶ 1, 2, 4, 7, 10.][2]  She also complained about this conduct to her supervisors and filed an EEOC charge about this conduct. See *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007) ("[Plaintiff's] numerous complaints provide sufficient evidence that she was subjectively offended by [supervisor's] comments[.]"); accord *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir. 2000) (holding that

---

[2] Defendant does not explain why the fact that Plaintiff "routinely used curse words in the office" means that she could not have been subjectively offended by Sosnowski's statements and conduct.  [46, at 9.] The Court does not see how one follows from the other.  Likewise, the fact a supervisor testified that Plaintiff sometimes laughed during other conversations of a vague, indirect sexual nature at work (*id.*) fails to establish that Plaintiff was not subjectively offended when Sosnowski grabbed her breasts.

reporting conduct "bespeak[s] concern over [supervisor's] actions and an unwillingness to tolerate further harassment"). Defendant fails to explain why this does not create *at least* an issue of fact regarding Plaintiff's subjective state of mind concerning Sosnowski's conduct.

While the Seventh Circuit has cautioned that drawing the line between sexual harassment and workplace vulgarity is "not always easy," it has explained that "sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; [and] obscene language or gestures" typically fall on the sexual harassment side of the line. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995). At a minimum, Plaintiff describes uninvited sexual solicitations and unwanted touching of a sexual nature. Context matters, of course. And Defendant is free to try out with a jury the argument that context shows that Sosnowski's sexual comments, propositioning, and repeated fondling of Plaintiff would not be offensive to a reasonable person. But to say that no reasonable jury would find this conduct offensive is far off the mark.[3]

### 2. Because Of Plaintiff's Sex

"A prima facie case of sexual harassment also requires a showing that, but for the plaintiff's sex, he or she would not have been the subject of harassment." *Pasqua v. Metro. Life Ins. Co.*, 101 F.3d 514, 517 (7th Cir. 1996). "[N]othing in Title VII necessarily bars a claim of discrimination 'because of * * * sex' merely because the plaintiff and the defendant (or the

---

[3] The fact that Terry testified in passing that people in the office "g[o]t, kind of, comfortable with each other" and a co-worker testified that employees typically enjoyed eating and laughing together in no way precludes a jury from concluding that Sosnowski's line-crossing conduct would be offensive to a reasonable person. [46, at 9.] In fact, the co-worker's next answer shows that Sosnowski's statements about asking Plaintiff to play with her genitalia would dramatically change the normal workplace environment. [See 50-1, at 50:10–18 ("[L]ike I said, we're all sitting back there and we're all having a semi-festive time. And for her to make that statement, it was kind of like, wow, okay, why would you even say that out loud to somebody? And then, like I said, to say it amongst people. It wasn't just two people sitting there. There's a group of us sitting down there. And for you to continue to be childish in that fashion is not cool."). Defendant cites nothing to the contrary.

person charged with acting on behalf of the defendant) are of the same sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79, (1998). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 80.

Defendant first argues that Plaintiff cannot prove this element because "Plaintiff cannot demonstrate that Sosnowski's conduct was motivated by sexual desire." [46, at 4.] That argument is a non-starter as a matter of law. Seventh Circuit "precedent does not limit hostile environment claims to situations in which the harassment was based on sexual desire." *Boumehdi*, 489 F.3d at 788. Defendant's contrary argument relies on language from *Oncale*:

> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual.

[46, at 5 (quoting and citing *Oncale*, 523 U.S. at 80).] Defendant contends that "[b]ecause it is undisputed in this case that Ms. Sosnowski is not homosexual, no inference of discrimination 'because of sex' can be drawn." *Id.* Defendant overlooks the next sentence in *Oncale*: "But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale*, 523 U.S. at 80 (noting examples of other "evidentiary routes" by which this inference can be drawn, such as "if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace" or "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace'); see also *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 562 (7th Cir. 2016) (noting that "there's no reason to think these examples are exhaustive"). The Court fails to see

how an absence of proof concerning Sosnowski's sexual desire could—by itself—entitle Defendant to judgment as a matter of law.

That said, there is ample evidence that Sosnowski desired a sexual relationship with Plaintiff. She placed her breasts on Plaintiff "several times a week," tried to show her breasts to Plaintiff in the office, touched Plaintiff's breasts multiple times, told Plaintiff she "want[ed] a woman to impregnate her," asked Plaintiff if she wanted to play with her genitalia, and raised the prospect of "being with a woman" with Plaintiff. [47-2, at 45; 50, ¶¶ 1–8.; 50-1, at 57.] Plaintiff and her co-workers interpreted this conduct to mean that Sosnowski wanted a sexual relationship with Plaintiff.[4] [50, ¶¶ 11–12.] Sosnowski's affidavit that she considers herself to be heterosexual does not preclude a jury from finding that was sexually attracted to Plaintiff, and it certainly does not render Sosnowski's motives "undisputed" as a matter of fact. [52, at 4.]

---

[4] Defendant advances a series of dubious arguments to exclude these witness's statements about Sosnowski's sexual attraction to Plaintiff, including that (1) it is improper lay witness testimony; and (2) Plaintiff was required to hire an expert to opine on Sosnowski's sexual orientation. [52, at 5–7.] The notion that a court would permit a witness who professes to have "specialized knowledge" and "reliable principles and methods" for determining if someone else is gay to cloak themselves in an expert's mantle before a jury is fanciful. Defendant does not identify a single court (and the Court cannot find one either) that has qualified a third-party sexual orientation "expert." And, putting aside the fact that *Defendant* cites testimony from lay witnesses Terry and Plaintiff in its opening brief as proof of Sosnowski's heterosexual orientation [46, at 4–5], lay witnesses can often testify about their perceptions of a conversation that they directly observed. See *United States v. Warner*, 2005 WL 2367769, at *7 (N.D. Ill. Sept. 23, 2005) ("[W]here a participant in a conversation understands words or expressions that may be unclear to the jury, the participant may testify as to his or her understanding of the statements made by another participant."); accord *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 547 (7th Cir. 2011); *Bohannon v. Pegelow*, 652 F.2d 729, 731 (7th Cir. 1981). Testimony that these observers believed Sosnowski was hitting on Plaintiff in these interactions is a far cry from the baseless speculation about sexual orientation in the two Seventh Circuit cases cited by Defendant. See *Johnson v. Hondo, Inc.*, 125 F.3d 408, 410–13 (7th Cir. 1997) (rejecting plaintiff's argument based on plaintiff's beliefs that supervisor may have "liked both" men and women because "what matters is whether [the supervisor] in fact *did* sexually harass members of both genders" and the evidence on that issue was largely undeveloped). The Court need not decide whether these witnesses can offer generalized testimony about Plaintiff's sexual orientation or motivations in the abstract because Sosnowski's words and conduct alone support the inference that she was motivated by a sexual attraction to Plaintiff, and that is sufficient to defeat summary judgment on this issue.

"Although none of these incidents necessarily proves that [Sosnowski] is gay, the connotations of sexual interest in [Plaintiff] certainly suggest that [Sosnowski] might be sexually oriented toward members of the same sex. That possibility in turn leaves ample room for the inference that [Sosnowski] harassed [Plaintiff] because [Plaintiff] is a [wo]man." *Shepherd*, 168 F.3d at 1010 (reversing summary judgment on sex discrimination claim). While a jury may ultimately agree with Defendant, there is sufficient evidence in the record by which a reasonable jury could find that Sosnowski's statements and conduct toward Plaintiff were borne of sexual attraction and desire for a sexual relationship with a woman, and thus were "because of" Plaintiff's sex.

Defendant contends that this case is "remarkably similar" to *Lord* [46, at 6–7; 52, at 7–8], but this Court does not see the resemblance. In *Lord*, the plaintiff's male co-workers teased him about his attraction to a female co-worker in the audio department by asking if he had "taken care of the audio bug." 839 F.3d at 559–60. One of plaintiff's co-workers also poked him in the buttocks while the plaintiff was bending over to put coins in a vending machine, slapped his buttocks twice while the co-worker walked by, and grabbed the plaintiff between the legs while he was writing on a white board. *Id.* at 560. The Seventh Circuit concluded that this kind of "sexual horseplay" and jokes with "sexual overtones" were insufficient to violate Title VII because there was no evidence that the plaintiff was targeted because of his sex. *Id.* at 562. The Seventh Circuit explained that "[n]othing suggests that [the co-worker] was homosexual, and [the co-worker's] behavior was not so explicit or patently indicative of sexual arousal that a trier of fact could reasonably draw that conclusion." *Id.*

While the conduct in *Lord* may be vulgar, it did not deviate significantly from the typical "male-on-male horseplay" described in *Oncale*. 523 U.S. at 81. In contrast, Defendant cites nothing to suggest that Sosnowski's breast weighing, laying, rubbing, or touching are typical

forms of horseplay among women that are analogous to men slapping each other on the buttocks. See *Shepherd*, 168 F.3d at 1011 (distinguishing "a friendly slap on the buttocks" from a supervisor "grabb[ing] himself" in front of the plaintiff). Fact finders rely on "[c]ommon sense, and an appropriate sensitivity to social context * * * to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Oncale*, 523 U.S. at 82. The peculiar nature of Sosnowski's "jokes"—including the fact that no other coworker interpreted her conduct as normal office behavior—is a context that this Court cannot ignore.[5] A reasonable jury could find that "[t]he sexual content" of Sosnowski's "behavior [was] anything but incidental," *Shepherd*, 168 F.3d at 1011, and was "patently indicative of sexual arousal," *Lord*, 839 F.3d at 562. That is also sufficient to preclude summary judgment on this basis.

Defendant also contends it is entitled to summary judgment because "Sosnowski did not limit her sexually laced banter and conduct to Plaintiff or even strictly to women." [46, at 5.] Defendant highlights "one time" when Sosnowski asked another employee, Michael Watts, "if he would have her kids" [50-1, at 44:18–19], and another instance in which she asked him if he wanted to see he wanted to see her vagina (*id.* at 56:15–22). Defendant also cites one instance in which she allegedly leaned over another male coworker, Willionta Peel. [46, at 5; 47-4, at 43:10–18.] None of these "facts" are contained in Defendant's Local Rule 56.1 statement [see 47], which means they are not a basis for summary judgment.

But even if these examples were properly before the Court, they are far too vague to entitle Defendant to judgment as a matter of law. "Title VII does not cover the 'equal opportunity' or 'bisexual' harasser * * * because such a person is not *discriminating* on the basis

---

[5] Defendant asserts that "all of the co-workers who testified in this case all believed that Sosnowski was engaging in horseplay when she engaged in the conduct." [52, at 9.] Defendant cites nothing to support that assertion, and it seems to be, at best, an inaccurate characterization. [See, *e.g.*, 50-1, at 26–27.]

of sex." *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000). The harasser "is not treating one

sex better (or worse) than the other; [s]he is treating both sexes the same (albeit badly)," which is

beyond the reach of Title VII. *Id.* Here, however, the record as it presently stands suggests that

Sosnowski did not apportion her harassment equally between male workers and Plaintiff. There

is no evidence that Sosnowski touched any male co-worker's genitals or tried to expose herself

to any men in the workplace. There is also no evidence that she made "daily" sexual comments

to male workers or would lean her breasts on male workers "several times a week." [50-1, at 14–

16.] Indeed, Plaintiff's coworkers testified that Sosnowski's conduct toward Plaintiff was

different in kind than anything else they observed in the office. [50-1, at 12, 25; 50-2, at 22.]

Moreover, Defendant provides absolutely no details about the incidents involving Watts and Peel

(*e.g.*, when they occurred, who was present, what specifically was said, or anything about their

context). In fact, the testimony about Watts comes from Peel's deposition and the testimony

about Peel comes from Terry's deposition. [See 46, at 5.] Neither Watts nor Peel appears to

have been asked directly about these particular incidents during their own depositions. While

inappropriate conduct directed at males weighs against the inference that Plaintiff was harassed

because of her sex, Defendant cannot secure summary judgment where the evidence presented

regarding these other incidents is this thin.

### 3. Severe or Pervasive Conduct

The third element of Plaintiff's sexual harassment claim is that the offending conduct was

severe or pervasive. This element "is in the disjunctive—the conduct must be *either* severe *or*

pervasive." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011). "Harassment need not

be both severe and pervasive—one extremely serious act of harassment could rise to an

actionable level as could a series of less severe acts." *Haugerud v. Amery Sch. Dist.*, 259 F.3d

678, 693 (7th Cir. 2001). "Factors in this assessment include the severity of the allegedly discriminatory conduct, its frequency, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with the employee's work performance." *Passananti v. Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012). Title VII does not impose a "general civility code" in the workplace, and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (internal citations omitted).

Defendant contends that "[a]ll four of the alleged incidents were extremely brief encounters and all four incidents involved minimal, if any physical contact." [46, at 9.] Construing the facts in the light most reasonable to Plaintiff, that is not what the record shows. Most problematic for Defendant, there were not "four" discrete incidents. There were (1) "several occasions" when "Sosnowski grabbed her crotch and asked Plaintiff if she wanted to play with Sosnowski's genitalia"; (2) "several times a week" when Sosnowski would "lay" her breasts on Plaintiff's back; (3) at least three or four comments about Plaintiff's breasts; (4) "a few occasions" when Sosnowski "rubbed up against" Plaintiff's breasts; (5) Sosnowski's comments about wanting a woman to impregnate her; (6) at least two comments testing whether Plaintiff opposed "being with a woman"; (7) the October 11, 2011 nipple rubbing incident; (8) the February 2012 offer to see a "hole" in Sosnowski's breast; and (8) the April 2012 breast weighing incident. [50, ¶¶ 1–9; 50-1, at 14–16, 57; 50-4, at 11–12, 17.] Notably, Sosnowski does not dispute that she touched Plaintiff's nipple or grabbed her breast; rather, she could not "recall" these incidents. [47-3, at 4.] These seem like incidents that a person would ordinarily recall—that is, unless incidents like these happened so frequently that they do not stand out. Regardless, "a supervisor touching one's breast near the nipple for several seconds is severe

enough to remove such conduct from any safe harbor" for conduct that is too "intermittent" or "equivocal" to be hostile. *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001).

"Courts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." *Mason v. S. Illinois Univ. at Carbondale*, 233 F.3d 1036, 1045 (7th Cir. 2000). They should "look at the totality of the circumstances." *Hall*, 713 F.3d at 331. "The fact that conduct that involves touching as opposed to verbal behavior increases the severity of the situation." *Worth*, 276 F.3d at 268. That is especially true when the touching involves "intimate body part[s]" such as Plaintiff's breasts and nipple.[6] *Id.* (same body parts); accord *Patton v. Keystone RV Co.*, 455 F.3d 812, 817 (7th Cir. 2006) ("[T]he touching of the 'breast near the nipple for several seconds is severe enough' to constitute a hostile environment by itself."). "That the touching in this case lasted for several seconds also increases its severity." *Worth*, 276 F.3d at 268. Taken together, a reasonable jury could conclude that the repeated solicitations and multiple instances of unwanted physical contact of (and with) inmate body parts over this eight-month period were sufficiently severe or pervasive to establish a hostile work environment. Accord *Acosta v. Valley View Dental Ctr. P.C.*, 2008 WL 4371309, at *3 (N.D. Ill. Feb. 27, 2008). Therefore, the Court denies summary judgment on Count II, the sexual harassment and hostile work environment claim.

## B.     Retaliation Claim (Count III)

Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee "because [s]he has made a charge, testified, assisted, or participated in [a

---

[6] Defendant points out that "each incident was accompanied by non-sexual comments," [52, at 9–10], but is entirely unclear what point Defendant is making. A defendant who gropes an employee is not immunized from Title VII liability if he or she talks about a benign subject like the weather while doing so. Certainly, a reasonable jury could find that the fact that Sosnowski said Plaintiff looked cold when she touched her nipple and said she wanted to "weigh" Plaintiff's breasts while she held them for five seconds does nothing to transform this inappropriate conduct into something other than harassment.

relevant] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To prevail on an unlawful retaliation claim, Plaintiff "must prove three elements: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action." *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005). Defendant challenges the first and third elements only.

### 1. Protected Activity

"For purposes of retaliation claims, statutorily protected activity generally consists of either an employee filing a charge with the EEOC or opposing any practice made unlawful under 42 U.S.C. § 2000e–3(a)." *Nielson v. Acorn Corrugated Box Co.*, 2002 WL 1941365, at *4 (N.D. Ill. Aug. 21, 2002). Here, Plaintiff complained about sexual harassment to Defendant in May 2012 and filed an EEOC charge on June 8, 2012. [50, ¶¶ 13; 16.] Both actions ordinarily fit comfortably within the definition of statutorily protected activity.

Defendant contends that because "the conduct complained of was nothing more than workplace banter that had sexual overtones," "Plaintiff's complaints about the conduct cannot be considered as protected activity." [52, at 10.] Defendant acknowledges that "a retaliation claim isn't doomed simply because the complained-of conduct was not in fact an unlawful employment practice" so long as the plaintiff has "a sincere and reasonable belief that he is opposing an unlawful practice." *Lord*, 839 F.3d at 563 (citation, internal quotation marks, and emphasis omitted). "The objective reasonableness of the belief is not assessed by examining whether the conduct was persistent or severe enough to be unlawful, but merely whether it falls into the category of conduct prohibited by the statute." *Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 771 (7th Cir. 2008).

"It is improper to retaliate against anyone for claiming a violation of Title VII unless that claim is 'completely groundless.' [A] groundless claim is one resting on facts that no reasonable person possibly could have construed as a case of discrimination." *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002). Plaintiff's sexual harassment claim is not groundless; there is a genuine dispute of material fact regarding this claim. Because a reasonable jury could conclude that Sosnowski's conduct violates Title VII, Defendant's argument predicated on the contrary conclusion must fail. Even so, Defendant fails to explain how Plaintiff lacked a sincere and the objectively reasonable belief that Sosnowski's comments and unwanted touching did not rise to the level of sexual harassment. If Defendant has case law for the proposition that an employee whose supervisor grabs her breasts with both hands for five seconds in the office without consent has an objectively *unreasonable* belief that this constitutes sexual harassment, it does not cite it. A reasonable jury could find that Plaintiff's belief that Sosnowski's this conduct was prohibited by Title VII was sincere and objectively reasonable, even if it does not find for Plaintiff on her sexual harassment claim.

## 2. Causal Link

"Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013). "The requirement of but-for causation in retaliation claims does not mean that the protected activity must have been the only cause of the adverse action. Rather, it means that the adverse action would not have happened without the activity." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 n.1 (7th Cir. 2014). "If [a] plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than

not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate." *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013).

Defendant contends that there is "overwhelming evidence that Plaintiff's termination was based on her poor performance," including "numerous disciplinary actions, frequent co-worker complaints" and Plaintiff's email stating she would no longer perform charter tours. [46, at 15.] Plaintiff's poor performance is a legitimate non-retaliatory reason for her termination, see *Pullins v. Amazon.com.Indc, LLC*, 671 F. App'x 383, 385 (7th Cir. 2016), and so "the true question is whether the proffered reasons were pretext for retaliation." *Burton v. Bd. of Regents of Univ. of Wisc. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017). "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012) (citation and internal quotation marks omitted). The "only question is whether the employer's proffered reason was * * * a lie." *Id.*

Plaintiff contends that several factors suggest pretext.[7] First, Sosnowski testified that Plaintiff met her expectations as a dispatcher. [50-6, at 25.] That fact is undisputed here. [See 50, ¶ 20.] Second, Plaintiff was terminated within four months of filing her EEOC charge. *Id.* ¶¶ 13, 16, 18. Sosnowski knew about both the EEOC charge and the internal complaint before terminating Plaintiff. *Id.* ¶ 14, 17. Third, the manner in which complaints were collected against Plaintiff in October 2012 was "highly unusual." *Id.* ¶¶ 22–25. Peel described this process as the "Salem witch hunt" in that Sosnowski was "bringing in drivers and bus monitors" to report any

---

[7] Plaintiff still relies on the "direct" versus "indirect" evidentiary methods [51, at 11], but the Seventh Circuit has jettisoned that framework. See *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). The relevant "legal standard" is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's * * * sex * * * caused the discharge" and the "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.* at 765.

problems with Plaintiff and "escalate the situation" or "speed this process of firing" Plaintiff along. [50-1, at 7.] Fourth, the termination recommendation was based in substantial part on complaints that were not recent. [47-24.] Several complaints involved incidents in 2011, and one incident had occurred nearly twenty months earlier [see 49, ¶ 10]. Some of the complaints collected from drivers over the two-day period in October 2012 had allegedly occurred months prior as well. [See 50, ¶ 26.] Fifth, Sosnowski deviated from her past practice in handling the October 2012 complaints against Plaintiff. Defendant's policy and Sosnowski's typical custom was to "talk to the subject of the complaint, investigate, and then determine if discipline was warranted." *Id.* ¶¶ 27, 29. That is how Sosnowski dealt with complaints against Plaintiff before the internal complaint was filed. *Id.* ¶ 32. After the complaint, however, Sosnowski did not show Plaintiff the complaints, give her an opportunity to respond, or investigate these complaints at all. *Id.* ¶¶ 30–32. Sixth, many of the complaints lodged in October 2012 are about unspecified "favoritism" or described Plaintiff as "rude," "unprofessional" or "disrespectful." [47-24, at 2–3.] According to Terry, complaints like these are common between drivers and dispatchers "because dispatchers are responsible for giving assignments, telling drivers what to do, and reporting inappropriate behavior." [50, ¶ 33.] Terry, who was Sosnowski's predecessor, stated that "[i]n [her] opinion, disagreements and conflicts between drivers and dispatchers happen at every location and are not a good reason for termination." [50-8, ¶ 18.]

Defendant disputes some of these facts in its reply brief and repeatedly emphasizes that Plaintiff's October 5th email in which she refused to perform more charter tours was the "last straw" that caused her termination. [52, at 10–12.] But this is summary judgment. Defendant cannot prevail by arguing that it has the better side of this factual dispute. It must show there is "*no* genuine dispute as to any material fact." Fed. R. Civ. P. 56(a) (emphasis added). Defendant

fails to explain why the facts outlined by Plaintiff, when taken in the light most favorable Plaintiff, cannot show pretext.  Indeed, Defendant cites no law at all in support of this argument. Multiple witnesses testified that the manner and grounds on which Plaintiff was terminated were atypical and suggestive of a concerted effort to get her fired.  The fact that Sosnowski changed her disciplinary practices after the harassment complaint was filed and opted to rely on unsubstantiated complaints without giving Plaintiff the opportunity to respond suggests an improper motive.  Defendant offers no evidence that Plaintiff would have been fired even absent her complaints about harassment.  See *Lord*, 839 F.3d at 564.  Taken together, a reasonable jury could find a causal link between Plaintiff's protected activity and her termination.  Accordingly, the Court denies summary judgment on Count III, the retaliation claim.

## IV.    Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [45] is granted in part and denied in part.  This case is set for further status on September 12, 2017 at 9:30 a.m. to set a schedule for pre-trial filings and to discuss the possibility of settlement.


Dated: August 16, 2017

_____
Robert M. Dow, Jr.
United States District Judge